FRED F. ROBERTS, Admr., Defendant in Error, *vs.* THE
CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed February 21, 1914—Rehearing denied April 8, 1914.*

1. NEGLIGENCE—*when an instruction to direct a verdict for the
defendant street railway company should be given.* An instruction
directing a verdict for the defendant street railway company should
be given, where the uncontradicted evidence shows that plaintiff's
intestate, while not upon any crossing intended for pedestrians and
without anything to interfere with his view of the defendant's cars,
which were approaching each other on their respective tracks in
the street and running at ordinary speed, attempted to cross the
tracks between the approaching cars and was struck and killed by
one car as he jumped back upon the track to avoid the other.

2. EVIDENCE—*testimony of employee is to be treated the same
as the testimony of any other witness.* A witness who appears to be
fair and truthful is not to be discredited merely because he works
for wages for a party to the suit, but his testimony is to be treated
the same as that of any other witness.

3. SAME—*when instruction as to considering interest of witness
should not be given.* An instruction authorizing the jury to con-
sider the relation existing between any witness and either party to
the suit and any interest the witness might have in the result of the
suit, in weighing his testimony, should not be given, where no wit-
ness having any interest in the result of the suit testified but it is
apparent the instruction was directed against a witness who was in
defendant's employ, thereby prejudicing the defense upon no legiti-
mate ground.

4. SAME—*fact that witness was the motorman of the car which
killed deceased does not establish an interest in the suit.* The fact
that a witness for the defendant street railway company was the
motorman on the car which struck and killed the plaintiff's intes-
tate does not establish the proposition that he is a witness interested
in the result of the suit, as a judgment in favor of the plaintiff
would not establish any liability against the witness.

5. INSTRUCTIONS—*when an instruction as to action of person in
sudden peril is misleading.* An instruction stating the abstract rule
of law with reference to persons confronted with sudden danger
not being required to act with the deliberation and foresight re-
quired under ordinary circumstances is misleading, where it makes
no reference to the care of the person in placing himself in the
perilous position, which was the important question in the case.

6. SAME—*ordinary care, reasonable care and due care are convertible terms.* Ordinary care, reasonable care and due care are convertible terms, and mean that degree of care which ordinarily prudent persons are accustomed to exercise under the same or similar circumstances, and hence the circumstances in which persons are placed must necessarily be considered in determining the question of fact whether the required degree of care has been exercised.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. BENJAMIN W. POPE, Judge, presiding.

SAMUEL S. PAGE, and WATSON J. FERRY, for plaintiff in error.

LEE & LEE, and CHARLES C. SPENCER, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

A writ of *certiorari* was granted on the petition of the plaintiff in error, the Chicago City Railway Company, to bring in review the judgment of the Appellate Court for the First District affirming a judgment of the superior court of Cook county for $5000 against the plaintiff in error, in favor of the defendant in error, Fred F. Roberts, administrator of the estate of Alfred Smith, deceased, for damages resulting to the widow and two brothers, next of kin to said Alfred Smith, alleged to have been caused by the negligence of plaintiff in error.

The declaration contained three counts, the first two of which made general charges of negligence on the part of defendant in the management of its cars, without specifying any particular act or omission in which the alleged negligence consisted. The third made a specific charge which there was no evidence to sustain, and the court directed the jury to disregard it. The defendant requested the court to

direct a verdict of not guilty on the other counts making the general charges, which the court refused to do.

The accident occurred on Clark street, in the city of Chicago, and this was the situation: Clark street runs north and south and Monroe and Madison streets run east and west, crossing it. Madison street is the next street north of Monroe. The defendant has double tracks in Clark street, the west track for cars going south and the east track for cars going north. There was only one witness of the facts and circumstances which led to the death of Smith and there was no material controverted question of fact. At about six o'clock in the afternoon of a clear summer day, Smith, who was a pressman in the employ of the Inter-Ocean Newspaper Company, stood on the sidewalk on the west side of Clark street, between Madison and Monroe streets, about five feet from the witness. A car was approaching in that direction on the west track a short distance south of Madison street. Another car going north on the east track was making the stop required by the ordinance at the south side of Monroe street. The witness stood waiting for the cars to pass, when Smith started across the street in a south-easterly direction. The car going north started after making the stop at Monroe street. The witness said that the west rail of the west track was about fifteen or twenty feet from the sidewalk, and when Smith crossed that track the car that was going south was quite near. Just as he was stepping on the west rail of the east track the car going north on that track was within five or six feet of him and the motorman gave a sharp ring with the gong. Smith jumped back on the west track, in front of the car going south, which was about ten feet from him. As he jumped back on the west track the motorman set his brakes and made all possible effort to stop the car, but it struck Smith, ran over him and dragged him five or ten feet, when the car was stopped. Two passengers who were in the front vestibule of the car which

struck Smith and were paying their fares and getting trans-
fers felt the sudden shock from the brakes, and looking
out saw Smith whirling around in front of the car which
had struck him, and they saw him run over but saw noth-
ing else.   There was some opinion evidence of the wit-
nesses that the cars were running "pretty fast;" but that
is a relative term, which conveys no definite idea to the
mind when not stated in comparison with the ordinary rate
of speed or some definite standard, and there was no evi-
dence tending to show that either car was going at more
than such ordinary rate.   There was nothing in the circum-
stances which would justify an inference that either car was
running at a dangerous or unlawful rate of speed.   The car
which struck Smith was to stop north of the north cross-
walk at Monroe street and was within thirty feet of the
street, and the other car had only gone the width of Mon-
roe street and twenty-four or twenty-five feet when the
gong was sounded.   It was daylight and there was no ob-
struction whatever to the view of both cars by Smith.

The evidence, in the light most favorable to the plain-
tiff, with all the inferences that could be legitimately drawn
from it, did not tend to prove any fault or neglect on the
part of the defendant or the exercise of ordinary care on
the part of Smith.   The question whether Smith exercised
ordinary care is to be determined, not by the probabilities
when he left the sidewalk, but rather by the situation when
he reached the tracks and attempted to cross between the
approaching cars when the street was clear and there was
no obstruction to the view and no necessity for making the
attempt.   The evidence established that Smith misjudged
his ability to cross the two tracks between the approaching
cars, and on account of his error of judgment, for which
no one else could be held responsible, he lost his life.   Smith
could see both cars and the entire situation was open before
him.   He was not on any crossing for pedestrians and
needed no warning or signal that the two cars were ap-

proaching each other,—a fact that no one could fail to observe. The evidence raised no issue of fact proper to be submitted to a jury, and the court erred in not directing the verdict.

The court instructed the jury that they might consider the relation existing between any witness and either party and any interest the witness might have in the result of the suit, in determining the weight which ought to be given to the testimony of such witness. It is always proper to consider the interest which a witness may have in the result of the suit, but no witness who testified to any fact concerning the accident had any interest, either near or remote, in the result of the suit. The only witnesses for the defendant were the conductor and the motorman of the car which struck Smith. The conductor was not in the employ of the defendant but the motorman was, and he had no interest in the result of the suit, since the judgment for the plaintiff would not establish any liability against him. (*Chicago and Eastern Illinois Railroad Co.* v. *Burridge,* 211 Ill. 9.) There was no reason for that part of the instruction. The relation of employer and employee existed between the motorman and the defendant, but no witness is to be discredited simply because he is employed by a party to the suit. (*Cicero and Proviso Street Railway Co.* v. *Rollins,* 195 Ill. 219.) The testimony of an employee is to be treated the same as that of any other witness, and if he appears to be fair and truthful he is not to be discredited merely because he works for wages for a party to the suit. A similar instruction was regarded as incorrect, but not requiring a reversal, in *Bennett* v. *Chicago City Railway Co.* 243 Ill. 420, because it was obvious that in that case no harm resulted to the defendant. Counsel who regard the ruling of the court as correct argue that the physical facts impeach the testimony of the motorman and eliminate his testimony, but the facts referred to were as to what part of the car struck Smith and other matters

wholly immaterial. The instruction was directed at the motorman and no one else, and its natural effect would be to prejudice the defense upon no legitimate ground. Whether the error in giving it, standing alone, would require a reversal of the judgment we need not say.

The court also gave this instruction:

"The court instructs the jury that if a person, without any fault on his part, is confronted with sudden danger or apparent sudden danger, the obligation resting on him to exercise ordinary care for his own safety does not necessarily require him to act at such a time with the same deliberation and foresight which might be required under ordinary circumstances."

This has sometimes been said to state an abstract rule of law, but, strictly speaking, the only rule of law is that parties placed in the position of Smith and the defendant's employees must each use ordinary care, reasonable care or due care, which are convertible terms, and mean that degree of care which ordinarily prudent persons are accustomed to exercise under the same or similar circumstances. The term is relative, and, from its definition, necessarily depends on the situation of the parties in order to determine what a reasonably prudent person would do or omit to do in the same circumstances. The circumstances in which persons are placed must necessarily be considered in determining the question of fact whether the required degree of care has been exercised, and it is obvious that persons placed in a position of peril where a course of conduct must be determined without any time in which to deliberate, cannot be judged by the same rule applicable where there is ample time to determine what course to take to avoid danger. If the course pursued appears, in the light of the circumstances, to be such as would be adopted by reasonably prudent persons placed in the same situation, the law declares that there has been no want of care. It is equally obvious that where there is ample time for de-

liberation and to weigh the probable consequences of different courses of conduct, a person ought to be judged by those circumstances and held to exercise the degree of care that reasonably prudent persons would exercise under those circumstances. These propositions are so apparent that no harm could result from giving them in instructions applied to the particular case, based upon hypotheses of fact which the evidence tends to prove. When this court considered questions of fact, the rule as to a person placed in sudden peril without his own fault was stated in *Galena and Chicago Union Railroad Co. v. Yarwood,* 17 Ill. 509, *Chicago and Alton Railroad Co. v. Becker,* 76 id. 25, and other cases; and an instruction was considered good in *Chicago and Eastern Illinois Railroad Co. v. Storment,* 190 Ill. 42, where it contained a hypothesis of fact and the qualification that under the circumstances the plaintiff acted as a reasonably prudent person would have done under like circumstances. In this case the instruction was abstract in form, and did not require the jury to find, from the evidence, that Smith was confronted with a sudden danger without any want of ordinary care on his part. It diverted the attention of the jury from the vital question in the case, which was whether a reasonably prudent person would have attempted the crossing between the approaching cars, and treated the question whether Smith was guilty of negligence in jumping back when about to be run over by one car, although he came in contact with another, as the important question in the case. It is not probable that any jury would regard that act as a negligent one, and if the case turned on that question the jury would naturally find for the plaintiff. The instruction was misleading in omitting all reference to the real question in the case.

The judgments of the Appellate Court and the superior court are reversed and the cause is remanded to the superior court.    *Reversed and remanded.*