# Wytheville

THE CHESAPEAKE AND OHIO RAILWAY COMPANY
v. H. E. MARTIN AND W. H. PORTER.

June 14, 1928.

Reheard March 20, 1930.

Absent, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Leake & Spicer* and *D. H. Leake*, for the plaintiff in error.

*J. F. Hall*, for the defendants in error.

CAMPBELL, J., delivered the opinion of the court.

This action was brought by Martin and Porter, hereinafter called plaintiffs, against the defendant railway company, to recover damages for an alleged misdelivery of a carload shipment of potatoes. The defendant demurred to the evidence, the court overruled the demurrer and rendered judgment for the plaintiffs, and to that judgment this writ of error was awarded.

The material facts are these: In the fall of 1925, the plaintiffs, who were residents of New Kent and James City counties, respectively, were associated as partners in the sale and purchase of potatoes. They had contracted to purchase twenty cars of potatoes from the Michigan Potato Growers Exchange, to be delivered at Richmond, Virginia, subject to the right of inspection at that point. The plaintiffs had no place of business in Richmond, but had arrangements to store the

potatoes with the Bowman Transfer and Storage Warehouse. Before the arrival of the potatoes in issue, plaintiffs gave to the defendant a list of the car numbers and notified it that all potatoes billed to them were to be placed in storage in the Bowman warehouse and to deliver same to the warehouse.

The potatoes in suit were shipped from Wymans, Michigan, on November 6, 1925, and arrived at the Fulton yards of the Chesapeake and Ohio Railway, at Richmond, Virginia, on November 12, 1925. They were inspected November 16, 1925, by the plaintiffs, who paid the freight and presented an order in their behalf from the consignor.

The car, to reach Bowman's warehouse, had to be switched over the tracks of the Southern Railway. The defendant, having been notified to deliver all potatoes billed to plaintiffs to Bowman's warehouse, gave the Southern Railway orders to deliver the car to Harwood's warehouse, which was several blocks distant from Bowman's. The potatoes were delivered to Harwood's warehouse and remained there unknown to the plaintiffs until some time in May, 1926, and while there spoiled, presumably from exposure to heat and cold.

Plaintiffs, on May 26, 1926, gave defendant written notice of their claim for damages. From the date of shipment at Wymans, Michigan (November 6, 1925), until the giving of such notice (May 26, 1926), there elapsed six months and twenty days.

Section 2 (b) of the uniform bill of lading covering the shipment, which was issued by the Pere Marquette Railroad, at Wyman, Michigan, provided as follows:

"(b) Claims for loss, damage, or injury to property must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property (or, in case of

export traffic, within nine months after delivery at port of export), or in case of failure to make delivery, then within six months (or nine months in case of export traffic) after a reasonable time for delivery has elapsed; provided that if such loss, damage, or injury was due to delay or damage while being loaded on unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claims shall be required as a condition precedent to recovery."

It is the contention of the defendant that the notice required in the bill of lading has not been given by the plaintiffs. This contention is based upon the testimony of J. A. Neiss, the assistant clerk, who had been notified to deliver the potatoes to Bowman's warehouse. This witness stated that in his opinion "about eight days" was a reasonable time for delivery. An examination of the testimony of this witness does not show that he had any intimate knowledge upon the subject of what was a reasonable time for such shipment. However, it is argued that his evidence is conclusive as he stands unimpeached. Had the case upon the merits been submitted to the jury, they would have been the judges of the credibility of this witness.

In *Metropolitan Life Insurance Company* v. *Botto*, 153 Va. 468, 143 S. E. 625 (opinion handed down this day), it is said: "While the defendant practically concedes that the jury are the triers of fact, it is most strenuously urged that they are bound by the testimony of their unimpeached witnesses. It is true as a general proposition that the evidence of an unimpeached witness, if not inherently incredible, should be believed. But the fact that a witness has not been impeached—employing the term in its common acceptation—is not conclusively binding upon the jury. The jury are the judges of the credibility of the witness and

they have the right to determine from his appearance on the stand, his manner of testifying, his candor and fairness, his contradictions, if any, what weight shall be given to his evidence. *Horton's Case*, 99 Va. 855, 38 S. E. 184." *Clopton's Case*, 109 Va. 818, 63 S. E. 1022; *Conrad* v. *Williams*, 6 Hill (N. Y.) 444; *Charleston Ins. Co.* v. *Corner*, 2 Gill (Md.) 411; *C. & O. Ry. Co.* v. *Barger*, 112 Va. 692, 72 S. E. 693; Wigmore on Evidence, section 2034.

■ As a matter of law, if the jury upon a trial on the merits could not be compelled to accept as true the testimony of the witness, Neiss, the court, in passing upon the demurrer to the evidence, should not be required to do so.

■■ Through no fault of the plaintiffs, there was, as a result of defendant's negligence, a misdelivery of the potatoes. This action upon the part of the defendant was equivalent to nondelivery. Plaintiffs had a right to rely upon their notification to defendant to deliver their potatoes to Bowman's warehouse. This being true, we cannot say that plaintiffs have failed in carrying out their part of the contract as to notice, when they were in ignorance of the breach of contract upon the part of the defendants as to delivery. It must be conceded that plaintiffs promptly made claim when they discovered the true state of affairs. What is a reasonable time in case of shipment of goods cannot be defined with exactitude. What is a reasonable time in one case may not be a reasonable time in a similar case.

Whatever may be the decisions of the court elsewhere, we are of the opinion that the doctrine laid down in *Chesapeake & Ohio Ry. Co.* v. *Rebman & Clark*, 120 Va. 71, 90 S. E. 629, should be adhered to. In that case, plaintiffs delivered to the defendant two

carloads of lambs for shipment from New Castle, Virginia, to Jersey City, New Jersey, under the "Uniform Live Stock Contract." The defendant failed to deliver the lambs shipped, but in their stead delivered a different lot of lambs, of an inferior grade and value, to plaintiff's consignee, who in ignorance of this unaccounted for exchange of lambs, sold them and remitted the net proceeds to the consignors. Upon discovering the mistake, plaintiffs notified the defendant who denied liability. An action was thereupon brought by plaintiffs to recover the difference between the lambs shipped and those delivered to the consignee. There was a judgment for the plaintiffs. In the appellate court, the contention of the defendant was that the plaintiffs should be denied a recovery because "they did not present their claim within five days from the time the animals were removed from the cars or within a reasonable time thereafter."

In disposing of this contention, Judge Whittle said: "If it be conceded that plaintiffs were under obligation to give notice of their demand under the circumstances of this anomalous transaction, the evidence shows that such notice was given without delay as soon as the negligence of the defendant which occasioned the loss was discovered."

Upon the whole case, we are of the opinion that the judgment complained of is right and must be affirmed.

*Affirmed.*

### ON REHEARING.

RICHMOND, MARCH 20, 1930

CAMPBELL, J., delivered the opinion of the court.

This case was decided by this court on June 14, 1928 (143 S. E. 629), and the judgment of the lower court

was affirmed. A rehearing was granted plaintiff in error, and thus the case is before us again. The facts are fully set forth in the former opinion.

The main contention of the railway company is that the former decision of this court is in conflict with the decisions of the United States Supreme Court, as well as former decisions of this court.

The decision upon the former hearing was placed upon two theories: First: That the evidence was, upon a demurrer thereto, sufficient to justify the trial court in holding that the notice required by the bill of lading was given in a reasonable time; Second: That under the facts and circumstances of this case, Martin and Porter should be permitted a recovery for the loss of the potatoes, which was directly due to the negligence of the defendant in the nondelivery of the car of potatoes, and that the company is estopped from asserting the defense of lack of notice.

An examination of the cases relied upon by the company do not, in our opinion, sustain the contention that the law is that in every case a failure to give the required notice within the time limit fixed in the bill of lading precludes a recovery. It is true that in *Georgia, F. & A. R. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948, strong expressions are used denying the applicability of the doctrine of estoppel, but such language was not necessary to a decision of the case. This was the view of Justices McReynolds and Van Deventer in *Texas & P. R. R. Co.* v. *Leatherwood*, 250 U. S. 478, 39 S. Ct. 517, 63 L. Ed. 1096.

*Davis* v. *Rodgers*, 139 Va. 618, 124 S. E. 408, 410, is also relied upon. That case quotes from *Kahn* v. *American Ry. Exp. Co.*, 88 W. Va. 17, 106 S. E. 126, this language: "Nor can the period of limitation be

extended for lack of discovery of the loss. Negligence and unnecessary delay in the assertion of claim for losses in transportation are the evils against which the limitation provides."

In *Davis* v. *Rodgers* it was unnecessary to a decision to invoke the doctrine of estoppel. In the opinion it is said: "It was always possible at the end of each day for the plaintiff to tell how much cotton was short * * *." Therefore, when plaintiff failed to give the required notice within the six months limitation, this court held he was barred. But, such is not the situation here. When the car of potatoes reached Richmond, plaintiffs paid the freight and ordered the company to deliver same to Bowman's warehouse for storage. They did not know, until the day before the notice was given, that the potatoes had not been delivered. In fact, until the time mentioned, they had been assured that the potatoes were in Bowman's warehouse.

In *Davis* v. *Rodgers, supra,* no mention is made of *C. & O. Ry. Co.* v. *Rebman,* 120 Va. 71, 90 S. E. 629, cited with approval in the former decision. The *Rebman Case* has not been distinguished or overruled in any subsequent case, and we are of opinion that the instant case is ruled by it.

*Affirmed.*