Clarence JORDAN, Appellant,

v.

Jeanette JORDAN, Appellee.

No. 91–FM–608.

District of Columbia Court of Appeals.

Submitted May 19, 1992.

Decided Nov. 24, 1992.

Charles H. O'Banion, for appellant.

William B. Barton, with whom George R. Douglas, Jr., was on brief, for appellee.

Before FERREN, STEADMAN, and SULLIVAN, Associate Judges.

FERREN, Associate Judge:

This appeal arises from a divorce after 21 years of marriage.[1] Appellant Clarence Jordan challenges the trial court's award to Mrs. Jordan of a one-half interest in the stocks appellant owned and a one-half interest in the marital home. Appellant contends that the trial court's findings of fact concerning the parties' home and appellant's stocks were clearly erroneous. In particular, appellant argues that because he purchased some of the stocks before the marriage, the court should not have found those stocks to be marital property distributable under D.C.Code § 16–910(b) (1989 Repl.). Appellant contends that those stocks were his "sole and separate property acquired prior to the marriage" and thus should have been assigned to him pursuant to D.C.Code § 16–910(a) (1989 Repl.). We affirm.

Before his marriage to Jeanette Jordan, appellant began investing in the stock market. By the time Mr. and Mrs. Jordan were married on March 27, 1969, appellant

1. The parties had one child, who was born on September 3, 1970.

had accumulated approximately $8,000 in stocks. He continued to trade in stocks during the parties' marriage. In addition, Mr. Jordan purchased the family home at 482 Burbank Street, providing the down payment and paying the mortgage.

For most of the couple's married life, Mrs. Jordan did not work and did not amass wealth of her own. Rather, she made non-monetary contributions to the care and management of their home, their child, and their child's education and up-bringing. The trial court found that Mrs. Jordan's contributions to the marriage, primarily in the form of household services and childcare, allowed Mr. Jordan the time and opportunity to amass a "relatively nice wealth." Moreover, the trial court noted that Mr. Jordan had promised his wife both before and during their marriage that he would "share everything with her" and had indicated to her that he did not want her to work.[2] The trial court found that Mrs. Jordan relied on Mr. Jordan's promises.

■ By amending D.C.Code § 16–910 through the Marriage and Divorce Act of 1977, the Council of the District of Columbia "changed the legislative scheme." *Turpin v. Turpin*, 403 A.2d 1144, 1146 (D.C.1979).

Unlike its predecessor, the present-day section authorizes the Superior Court to distribute individually as well as jointly-held property, with certain excep-tions.... As is clear from the language of [D.C.Code § 16–910] subsection (a), a threshold requirement for exception of property [from distribution] is that the property be the "sole and separate" property of one spouse. *Id.* Furthermore, "[t]here is no room under subsection (a) for ... tracing funds." *Id.* at 1147. Therefore, in order for the court to withhold from marital distribution property held in the name of one spouse, the party who claims sole and separate ownership has the burden of establishing that it is the same property that he or she acquired before the marriage. Otherwise, the property presumably was acquired during the marriage and is subject to distribution under § 16–910(b).[3]

■ The trial court in its oral findings stated that "there is no evidence of which of the stocks may have been acquired during the first ten years of Mr. Jordan's employment life" and, hence, before the couple's marriage. The court's written findings state, somewhat differently, that "there is no evidence that the stock may have been acquired before the marriage."[4] Mr. Jordan did testify that he purchased some stocks before the marriage. But, as both the oral and written findings make clear, there is no record evidence establishing that, immediately before the divorce, Mr. Jordan still owned any particular stock purchased before the marriage.[5] For that

**2.** Although Mr. Jordan argues that the trial court's finding that he did not wish his wife to work is clearly erroneous, there is ample support in the record for that finding. Mrs. Jordan testified repeatedly that Mr. Jordan did not wish her to seek employment outside the home, and her testimony on this point was uncontroverted.

**3.** In *Mazique v. Mazique,* 123 U.S.App.D.C. 48, 356 F.2d 801, *cert. denied,* 384 U.S. 981, 86 S.Ct. 1882, 16 L.Ed.2d 691 (1966), the court said: "Where property is held solely in the name of one spouse, the other spouse must make a showing of a legal or equitable interest therein." *Id.* at 51, 356 F.2d at 804. That court, however, was interpreting the old marriage law, at a time when "[t]here was no statutory authority to reach individually-owned property" unless the other spouse could show "a legal or equitable interest" in the property. *Hemily v. Hemily,* 403 A.2d 1139, 1141 (D.C.1979). As elaborated in the text, however, we must deal with present-day D.C.Code § 16–910, which has altered the old principles of distribution of property when a couple divorces. *See Turpin,* 403 A.2d at 1146.

**4.** The oral and written findings are not necessarily inconsistent with each other. Although the oral findings can be read to imply that Mr. Jordan acquired some stocks before his marriage, those findings also make clear the court could not discern whether any stock held at the end of the marriage had been purchased before the marriage. In any event, we are reviewing the court's final, written findings which, presumably, clarify any ambiguity in the oral findings.

**5.** Mr. Jordan did not proffer documentation, for example, that, despite over twenty years of active stock trading, the shares of Greyhound and Occidental Petroleum held in his name at the end of the marriage were the same shares of those stocks he claimed he owned before the marriage.

reason, we are satisfied that the trial court did not clearly err in finding that the stocks Mr. Jordan owned at the end of the marriage were marital property, even though held in his name alone.

■ Because the marital home was acquired during the parties' marriage, it was marital property which the court accordingly had broad discretion to distribute, without regard to title, under D.C.Code § 16–910(b) in an equitable, just and reasonable manner. *See Broadwater v. Broadwater,* 449 A.2d 286, 287 (D.C.1982); *Darling v. Darling,* 444 A.2d 20, 23 (D.C.1982).

The trial court's conclusions reflect careful consideration of the relevant factors before it distributed all the property, including the stocks and the marital home. *See* D.C.Code § 16–910(b). Finding no abuse of discretion, we have no reason to disturb the trial court's findings and conclusions. Accordingly, the trial court's distribution of property is hereby

*Affirmed.*

SULLIVAN, Associate Judge, concurring in part and dissenting in part:

I concur in that part of the court's opinion which holds that the trial court did not err in awarding to appellee a one-half interest in the marital home and a one-half interest in certificates of stock in United Telecommunications, Inc., Washington Gas Light Co., Potomac Electric Power Co., Sears, Roebuck and Co., Colgate–Palmolive Co., First Western Financial Corp., and Hechinger Co. Appellant testified that he purchased stock in those companies during the course of the parties' marriage. Accordingly, the court properly distributed that stock as marital property pursuant to D.C.Code § 16–910(b) (1989). I respectfully dissent, however, from that part of the court's opinion which holds that the trial court's award to appellee of a one-half interest in stock in Occidental Petroleum Corporation (Occidental) and Greyhound Lines, Inc. (Greyhound) was not clearly errone-

ous. Because I am of the opinion that the trial court's findings supporting its award of Occidental and Greyhound stock are not sufficient to allow meaningful appellate review, I would remand the case to the trial court with instructions to make express findings of fact and conclusions of law with respect to its award of stock in those companies. *See Pimble v. Pimble,* 521 A.2d 1173, 1175 (D.C.1987).

### I.

Appellant's uncontroverted testimony at trial was that at the time of his marriage to appellee, he owned 200 shares of Occidental stock and 100 shares of Greyhound stock and, that at the time of the separation of the parties, he owned 572 shares of Occidental stock and 300 shares of Greyhound stock. At the conclusion of the trial, the court ruled orally that "the *bulk* of the stock [was] acquired during the marriage," (emphasis added), thereby recognizing explicitly that evidence adduced at trial proved that some shares of the Occidental and Greyhound stock had been acquired prior to the marriage. Therein lies the problem, in view of the failure of the court to otherwise address that evidence in its findings of fact and conclusions of law.

In its written Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce, the court's only finding of fact with respect to any stock was as follows:

7. Mrs. Jordan did not participate with Mr. Jordan in making investment decisions in the stock market. Although Mr. Jordan wanted her to research stocks and help choose those stocks worthy of investment, she did not find it interesting, and left it all to Mr. Jordan who did find it interesting.

That written finding of fact was followed by the court's written conclusion of law which contradicts the oral ruling previously made[1]. The written ruling states:

4. There is *no* evidence to suggest that the stock may have been acquired before

---

[1]. Where, as here, the trial court makes conflicting findings, an appellate court will not choose those findings it deems preferable, but must remand to the trial court to clarify its findings.

*See United States v. Hollis,* 424 F.2d 188, 192 (4th Cir.1970). Thus, I disagree with the majority's decision to review the written findings only. *See ante* at 1239 n. 4.

the marriage during the first ten (10) years of Mr. Jordan's employment life. To the contrary, it *appears* that the stocks were acquired during the marriage.... Therefore, the stocks to which Mr. Jordan testified [presumably Occidental and Greyhound] are also marital property. (Emphasis added).

At no point in its written findings did the court either refer to its prior oral findings of fact or incorporate the oral findings into the written findings and judgment.

Although there was no record evidence establishing that immediately before the divorce appellant still owned any of the Occidental and Greyhound stock purchased before the marriage,[2] I disagree with my colleagues' decision that the trial court did not clearly err in finding that *all* stocks appellant owned at the end of the marriage were marital property. It cannot be disputed that appellant offered uncontroverted evidence during the trial that he was the sole owner of a specified number of shares of stock in both Occidental and Greyhound prior to the marriage and at the time of the divorce. Indeed, the trial court, in making its oral finding that the *bulk* of the stock was acquired during the marriage, recognized explicitly that evidence had been adduced to prove that some of the shares of Occidental and Greyhound stock had been acquired prior to the marriage. Thus, it was incumbent upon the court to weigh appellant's evidence and to clearly resolve the issue of whether appellant had sustained his burden of proof that the Occidental and Greyhound stock he owned at the time of the divorce, or some shares of that stock, was the same stock that he owned prior to the marriage and, accordingly, was not marital property. It may well be that after appropriate consideration of all of the evidence, *including* appellant's uncontroverted testimony, a trial court could properly conclude that appellant had failed to sustain his burden of proof on this issue. For the trial court to distribute the shares of stock in Occidental and Greyhound, how-

ever, without having considered and weighed, with explication, relevant testimony of appellant, deprives us of an opportunity to conduct a meaningful review. Accordingly, I would remand this case for appropriate findings of fact and conclusions of law on this issue in accordance with Super.Ct.Dom.Rel.R. 52. *See Pimble v. Pimble, supra,* 521 A.2d at 1175; *United States v. Hollis, supra,* 424 F.2d at 192.

*Chesapeake & Ohio Ry. Co. v. Martin,* 283 U.S. 209, 218, 51 S.Ct. 453, 456, 75 L.Ed. 983 (1931)). In this regard, the trial court never found that appellant was not a credible witness.

---

**2.** Nonetheless, uncontroverted, competent, and credible oral testimony should enable a party to sustain a burden of proof. *See Dmitrieff v. Campbell,* 234 A.2d 808, 810 (D.C.1967) (citing