**UNITED TRANSPORT SYSTEMS,**
**Plaintiff,**

v.

**PIE IMPORT EXPORT, Defendant.**

**No. 93 Civ. 8401 (CBM).**

United States District Court,
S.D. New York.

June 12, 1995.

Piken & Piken, P.C., Michael K. Chin, Lake Success, NY, for plaintiff.

David Muller, defendant pro se.

*OPINION*

MOTLEY, District Judge.

## I. Findings of Fact and Conclusions of Law

This is an action pursuant to the provisions of the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*, to collect payment for unpaid freight bills for a shipment moved in interstate commerce. Plaintiff seeks to recover $2,388.10 plus pre- and post-judgement interest and costs. As discussed below, Plaintiff failed to comply with the requirement of transporting goods with reasonable dispatch as prescribed by the regulations of the Interstate Commerce Commission ("ICC"). Therefore, the request for relief is denied, and the Complaint is dismissed.

After hearing the evidence and after weighing the testimony, exhibits received in evidence and the credibility of the witnesses, the Court makes the following findings of fact and conclusions of law:

A. The Parties and Other Actors in the Transaction in Dispute.

1. Plaintiff United Transport Systems ("United") is a New York corporation with its principal office at 641 West 59th Street in New York City, New York. At all relevant times, United was a motor common carrier operating in interstate commerce under the authority of the ICC. (J. Pre–Trial Order ¶ D(1).)

2. Defendant PIE Import Export Inc. ("PIE") is a New York corporation with its principal office at 495 South Broadway in Yonkers, New York. At all relevant times, PIE was engaged in the business of importing general merchandise. (J. Pre–Trial Order ¶ D(2); R. at 9–10.)

3. Hudd Distribution Services, Inc. ("Hudd") is a corporation which operates a warehouse at 9400 Hall Road in Downey, California. Hudd provided warehouse services to PIE. (R. at 30; Pl.'s Ex. 3.)

4. Dynasty Warehouse, Inc. ("Dynasty") is a corporation with a warehouse located in the Brooklyn Navy Yards in Brooklyn, New York. Dynasty provided warehouse services to PIE. (R. at 33; Pl.'s Ex. 3.)

5. Sano/Cup Coastwide Sales ("Sano/Cup") is a company with a facility at 136 41st Street in Brooklyn, New York. Sano/Cup was a customer of PIE's. (R. at 87, 93, 106; Pl.s Ex. 3.)

B. Prior Course of Conduct Between the Parties.

6. The shipment in dispute in the instant case is not the first one transported by United for PIE; rather, in early 1991, United transported a shipment of toothpicks for PIE from California to Brooklyn, New York. (R. at 41–43.) Delivery of this shipment was executed within six days after pickup. (R. at 85.) Based on this shipment as a trial run, PIE claims it came to an oral understanding with United that future shipments could be delivered within six to ten days. (R. at 86.)

7. According to Plaintiff's own witness, in the trucking industry, most instructions are given by telephone unless air or ocean transport is involved. (R. at 46.)

### C. The Transaction in Dispute.

8. Mr. James Pace was employed by United in New York City, New York as their East Coast manager in 1991. (R. at 26–27, 29.) In that capacity, his duties included overseeing the operation, billing and transfer of freight between terminals. (R. at 27.)

9. On or about July 23, 1991, Mr. Pace received a telephone call from a representative of PIE requesting the pickup and transport of a shipment of toothpicks for PIE from California to Brooklyn, New York. (R. at 26–27; Pl.'s Ex. 3.) Mr. Pace then notified United's Chino, California terminal manager of the need for and the location of the pickup. (R. at 27–29.) The required pickup was made a couple of days later at Hudd's facility in Downey, California. (R. at 28–30; Pl's Ex. 3.)

10. The bill of lading for this shipment was generated at the point of pickup by Hudd acting on behalf of PIE. (R. at 30–31; Pl.'s Ex. 3.) This bill of lading did not include any instructions regarding a specified time or date of delivery. (R. at 77–78; Pl.'s Ex. 3.) However, PIE needed to receive the shipment within a period of fourteen or fifteen days from the date of pickup because part of the shipment was for delivery on account to PIE's customer Sano/Cup. (R. at 87, 92–94, 106; Pl.'s Ex. 3.)

11. According to Mr. Pace, he specifically avoided ever guaranteeing a delivery date for any shipments, because it is predictable that "something will go wrong." (R. at 31–32.)

12. After pickup, the shipment was taken to United's terminal in Chino and loaded onto an eastbound road trailer. The shipment was sent as a "road unit"; i.e., the freight was to be delivered directly to the destination warehouse from the trailer without first being taken to United's local facility in New York. (R. at 32.)

13. During transport, the truck had mechanical difficulties, and the shipment was, therefore, delayed. (R. at 71–72.) Sano/Cup refused to accept delivery. (R. at 32–33, 88.) Delivery was made to Dynasty on a date four and one-half to five weeks from the date of pickup. (R. at 32, 58, 87–88.)

14. According to Mr. Pace, transportation of this sort from California to New York ordinarily takes from one to at most three weeks. (R. at 47–48.)

15. PIE had placed its order for delivery of goods by United from California to New York in order to fill a gap in shipments from a supplier in Shanghai, People's Republic of China. (R. at 93.) By the time United made its delivery, PIE had already received a shipment from China and no longer needed the merchandise that United delivered. (R. at 93, 112–13; Def.'s Exs. A, B, C.)

16. United never received any payment for the delivery it made to Dynasty for PIE. (R. at 37–39.)

## II. The ICC's Requirement that Goods Be Transported With Reasonable Dispatch.

The Carmack Amendment to the Interstate Commerce Act provides in part that "[a] carrier or freight forwarded may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section." 49 U.S.C. § 11707(e) (1988). ICC regulations require that "[a] claim ... for loss, damage, injury, or delay to cargo, shall not be voluntarily paid by a carrier unless filed ... within the specified time limits applicable thereto and as otherwise may be required by law, the terms of the bill of lading ..., and all tariff provisions applicable thereto." 49 C.F.R. § 1005.2(a) (1994). In accordance with these provisions, the ICC has mandated that all common carriers engaged in the sort of transaction at issue in the instant case use the Uniform Straight Bill of Lading. In pertinent part, this provides that "[n]o carrier is bound to transport [any] property ... in time for any particular market or otherwise than with reasonable dispatch." 49 C.F.R. § 1035 App. B § 2(a) (1994). As a required part of the bill of lading, this provision becomes a part of the contract between

the United and PIE. *See Southern Pac. Transp. Co. v. Commercial Metals,* 456 U.S. 336, 342, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982) ("The bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers."). The question, then, is what constitutes reasonable dispatch?

A closely related provision of the Uniform Straight Bill of Lading provides that "[a]s a condition precedent to recovery, claims must be filed in writing ... in case of failure to make delivery ... within nine months after a reasonable time for delivery has elapsed." 49 C.F.R. § 1035 App. B § 2(b) (1994). In examining a very similar bill of lading provision, the Supreme Court held that a reasonable time for delivery is "such time as is necessary conveniently to transport and make delivery of the shipment in the ordinary course of business, in the light of the circumstances and conditions surrounding the transaction." *Chesapeake & Ohio Ry. v. Martin,* 283 U.S. 209, 213, 51 S.Ct. 453, 455, 75 L.Ed. 983 (1931). *See also Imperial News Co. v. P–I–E Nationwide, Inc.,* 905 F.2d 641, 644 (2d Cir.1990) (quoting *Chesapeake & Ohio Ry.); Elroy Enterprises, Inc. v. Roadway Express, Inc.,* 746 F.Supp. 284, 287 (E.D.N.Y.1990) (same). Thus, the test to be applied in the instant case is one of reasonableness under all the surrounding circumstances.

Plaintiff's sole argument for why delivery in this case should not be found to have been unreasonably delayed is that the truck encountered unforeseeable mechanical difficulties and United, the carrier, cannot be held liable for the consequences of such unforeseeable delays. However, the Court is not prepared to go down this road with the Plaintiff. As anyone who has ever owned a motor vehicle of any sort well knows, mechanical problems of a wide variety are, indeed, quite foreseeable even when one is operating a brand new conveyance. United's own witness stated expressly that he considered it predictable that with each delivery something would go wrong during transit. In the absence of any detailed explanation of the claimed mechanical difficulties, it simply strains credulity too far to suggest that United cannot be held accountable for the resulting delay. Because PIE's previous experience with United suggested a likely delivery time of six to ten days, and because Plaintiff's own witness stated that such a delivery would take, at most, three weeks, the Court concludes that the actual delivery time of nearly five weeks was not within the required bounds of reasonable dispatch.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's request for relief is denied and the Complaint is, therefore, dismissed.