LANCASTER ET AL., RECEIVERS OF THE TEXAS & PACIFIC RAILWAY, *v.* McCARTY ET AL.

ERROR TO THE COURT OF CIVIL APPEALS FOR THE SECOND SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 148. Submitted December 11, 1924.—Decided March 9, 1925.

The second Cummins Amendment, (August 9, 1916, c. 301, 39 Stat. 441,) authorizing carriers to limit liability upon property received for transportation to the value declared in writing by the shipper, where the rates are based on such value pursuant to authority from the Interstate Commerce Commission,—*held* applicable, and controlling the state law, in respect of a claim for damage to goods

shipped intrastate between two points in Texas subject to tariff and classification adopted by the carrier pursuant to an order of the Commission requiring the carrier to remove discrimination against interstate commerce resulting from lower intrastate rates. *Shreveport Case,* 234 U. S. 342. P. 430.

248 S. W. 816, reversed.

ERROR to a judgment of the Court of Civil Appeals of Texas sustaining a recovery from the receivers of the Railway for damages to goods shipped.

*Mr. T. D. Gresham* and *Mr. F. H. Prendergast* for plaintiffs in error, submitted.

No brief filed for the defendants in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This was a suit for damages in the County Court of Eastland County, Texas, by the defendants in error, partners as the Cisco Furniture Company, to recover from the plaintiffs in error, the Receivers of the Texas & Pacific Railway, $198 for injury to two rugs and to three chairs shipped by the Furniture Company from Fort Worth, Texas, over the Railway to Cisco, Texas, and $20 for attorney's fees exacted by a state statute for the delay of the Railway in allowing and paying the claim. The real issue here is whether the amount of the damages for the admitted injury should be measured by the statutory law of Texas or by the regulations of the Interstate Commerce Commission with respect to the classification of traffic and fixing of rates, as directed by it in accordance with the decree by the Commerce Court of the United States, affirmed by this Court in *Houston & Texas Railway Co.* v. *United States,* 234 U. S. 342, known as the *Shreveport Case.* The damage to the chairs is not involved. The question arises only as to the two rugs. The transporta-

tion began at Fort Worth, Texas, and ended at Cisco, Texas. It was carried on under a bill of lading according to the forms of the Interstate Commerce Commission, which provided that the rates should be 70 cents per 100 pounds on rugs classified as not exceeding in value $75. The bill of lading was stamped with the following notation: "Valuation on rugs less than $75 per 100 pounds." The rugs in the transit were much damaged by acid and were said to be worth but $5 apiece after the damage. The shippers claim that their value when shipped was $95 apiece. Under the valuation noted on the bill of lading, their value could not have exceeded $60 because each rug weighed 40 pounds.

The Texas Court of Civil Appeals, which was the highest court to which the case could be brought (because the Supreme Court of Texas held that it had no jurisdiction), relied upon Article 708 of the Revised Statutes of Texas, which provides that railroad companies within the State shall not limit or restrict their liability, as it existed at common law, by any general or special notice, or by inserting exceptions in the bill of lading, or by memorandum given upon the receipt of the goods for transportation, or in any other manner, and that any such special agreement shall be invalid. These rugs were shipped March 13, 1920, after the second Cummins Amendment to the Interstate Commerce Act (August 9, 1916, 39 Stat. 441, c. 301), which permits to carriers a limitation of liability upon property received for transportation concerning which the carrier shall have been authorized by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper, or agreed upon in writing as the release value of the property. In such a case, such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released.

The writ of error is brought here under § 237 of the Judicial Code, on the ground that this order of the Interstate Commerce Commission fixing the classification and rates thereunder is an authority exercised under the United States which by the contention of the shippers was drawn in question, and its validity denied by the state court. *Champion Lumber Company* v. *Fisher*, 227 U. S. 445, 451. It is not disputed, therefore, that, if the order of the Interstate Commerce Commission and the Western Classification No. 56 apply, the judgment of the Court of Civil Appeals of Texas should be reversed; if Article 708 R. S. of Texas applies, the judgment should be affirmed.

The *Shreveport Case* began by an application of railway carriers running west from Shreveport across the Texas State line to Houston and Dallas, to set aside an order of the Interstate Commerce Commission, on the ground that it exceeded its authority. The order was made in a proceeding initiated by the Railroad Commission of Louisiana before the Commission. The complaint in that proceeding was that the carriers maintained unreasonable rates from Shreveport, Louisiana, to various points in Texas, and that the carriers, in the adjustment of their rates over their respective lines, discriminated in favor of traffic within the State of Texas and against similar traffic between Shreveport and Texas points; that Shreveport competed in business with Houston and Dallas, and that the rates from Dallas and Houston east to intermediate points in Texas were much less, according to distance, than from Shreveport westward to the same points, with conditions similar in all respects. The difference was substantial, and injuriously affected the commerce of Shreveport. The Commission found that interstate rates out of Shreveport to main Texas points were unreasonable, and it fixed maximum rates for that traffic. It also found that the rates from Houston and Dallas

eastward to Texas points were so low as to be a discrimination and an undue and unlawful preference against Shreveport and against its interstate commerce. Accordingly, the carriers were directed to desist from charging higher rates from Shreveport to Dallas and Houston, respectively, and intermediate points, than were contemporaneously charged for the same carriage from Dallas and Houston to Shreveport for equal distances. The Commerce Court sustained the order, and so did this Court, leaving it to the Railroad Company to bring about the equality required either by decreasing the rates from Shreveport to the Texas points between that city and Dallas and Houston, or by increasing the intrastate rates from Houston and Dallas eastward to the Texas points between those cities and Shreveport. This Western Classification, which the carrier applied in this case, was adopted by the railroads under the authority of the Interstate Commerce Commission thus sustained in the *Shreveport Case*. That authority rested on the supremacy of federal authority in respect to interstate commerce. The intrastate rates fixed by the Texas State Railway Commission from Houston and Dallas eastward to Texas points were a discrimination against the interstate traffic between Shreveport and those same points; and, therefore, it was held to be within the power of the Interstate Commerce Commission, in preventing such unlawful discrimination under the Interstate Commerce Act, to direct the railways to ignore the Texas Commission rates and to establish rates, not unduly discriminating against interstate commerce, in intrastate traffic. Such an order, of course, included classification as well as rates. The two are so bound together in the regulation of interstate commerce that the effect of both must be reasonable and without undue discrimination. The Interstate Commerce Commission, therefore, had full authority to issue this order for the adoption of the Western Classification

for intrastate points between Houston and Cisco, both in Texas. The conflict between the Revised Statutes of Texas and the order of the Interstate Commerce Commission can only be settled by recognition of the supremacy of the federal authority. It is plain from the agreed statements of facts that the only recovery which could be had under the Western Classification in this case was less than $60. The limitation of liability was in accordance with the second Cummins Amendment, was properly agreed to, and was binding upon the shipper as well as the carrier.

The judgment of the Court of Civil Appeals must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*