## NATIONAL DOCK & STORAGE WAREHOUSE CO. v. UNITED STATES.

Circuit Court of Appeals, First Circuit. June 28, 1928.

No. 2204.

1. Estoppel ⬡70(2)—Warehousemen ⬡34 (5)—Failure to offer to pay charges prevents shifting of burden of proof to warehouseman, nor is he estopped to rely on want of offer, though he did not request it (Gen. Laws Mass. c. 105, §§ 15, 27, 32–34, 36).

Under Gen. Laws Mass. c. 105, § 15, as to warehouseman's duty to deliver and burden of establishing lawful excuse, and in view of sections 27, 32–34, 36, where warehouseman gave no reason for refusal or failure to deliver, owner's failure to offer to pay warehouseman's charges prevented shifting of proof to warehouseman, and he was not estopped to rely on such failure, though he did not request offer of payment.

2. Warehousemen ⬡34(7)—Receipt of wool and failure to deliver, without any explanation, makes prima facie case of negligence.

Warehouseman's receipt of wool and its failure to deliver it when called for made a prima facie case of negligence, in absence of circumstances tending to explain such failure; the question being one of general law.

In Error to the District Court of the United States for the District of Massachusetts. James M. Morton, Jr., Judge.

Action by the National Dock & Storage Warehouse Company against the United States. From a judgment for plaintiff for an insufficient amount (21 F.(2d) 755), it brings error. Affirmed.

Robert Homans, of Boston, Mass. (Hill, Barlow & Homans, of Boston Mass., on the brief), for plaintiff in error.

A. Chesley York, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM and JOHNSON, Circuit Judges, and BREWSTER, District Judge.

BINGHAM, Circuit Judge. This action is brought under the Tucker Act, Judicial Code, § 24, par. 20 (28 USCA § 41[20]), to recover for the storage, wharfage, and labor charges on certain bales and bags of wool, which the United States, through the Quartermaster Corps of the Army, had caused to be stored with the plaintiff in the years 1919 and 1920. The United States filed a counterclaim for damages due to the failure of the plaintiff to deliver, on or about November 19, 1919, to the quartermaster 14 bales of

wool, which he had stored with it in the latter part of 1918.

In the court below the plaintiff's charges were established at $3,718.50; the defendant's damages, at $2,478.31; and judgment was entered for the plaintiff for $1,240.19 and costs. Then this writ of error was taken.

The assignments of error relate to certain rulings made by the court bearing upon the defendant's right of recovery under its counterclaim and to the court's refusal to make certain rulings requested by the plaintiff; also to certain findings made by the court, on the ground that there was no evidence to support them.

There was no controversy as to the plaintiff having received the 14 bales of wool for storage and having issued its warehouse receipt for the same. As to the demand made upon the plaintiff for the delivery of the wool, it appeared that the quartermaster, on November 19, 1919, requested its delivery, and on November 19, 1919, wrote the plaintiff as follows:

"This morning I sent you order to deliver to my men and army truck 14 bales of wool remaining on hand at your warehouse under Q. M. C. lot No. 5295. My checker informs me that you are unable to deliver this wool at the present time, and I now request that you please so inform me in writing by bearer."

If a reply was sent to this, it was not put in evidence. The plaintiff admitted at the trial that it was unable to deliver the 14 bales of wool on either November 17 or November 19, 1919.

It also appeared that some time prior to November, 1919, the government had stored with the plaintiff many bales of wool, and that in that month there were 5,000 or 6,000 bales then stored with it; that on November 17 and on November 19, 1919, the government was indebted to the plaintiff, and had been since November 1, 1919, for storage charges incurred both before and after November 1st on bales of wool other than the 14 bales in question, which were not paid on November 19, 1919, and have not been since that time.

The plaintiff excepted to the following findings:

"The men on the truck were informed by the plaintiff's employees that the bales in question could not be found and advised the officer in charge to that effect. He thereupon asked the plaintiff to state its position in writing. Whether it did so does not appear; but apparently both parties understood that the goods were not delivered because the plaintiff did not have them."

The Uniform Warehouse Receipts Act, adopted in Massachusetts (Gen. Laws, c. 105), contains the following provisions:

"Section 15. A warehouseman, in the absence of a lawful excuse provided by this chapter, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor, if such demand is accompanied by—

"(a) An offer to satisfy the warehouseman's lien;

"(b) An offer to surrender, properly endorsed the receipt, if negotiable; and

"(c) A readiness and willingness to sign, when the goods are delivered, an acknowledgment that they have been delivered, if such signature is requested by the warehouseman.

"If the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal or failure."

"Section 27. A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise; but not, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

"Section 32. Subject to section thirty-four, a warehouseman shall have a lien on goods deposited or on the proceeds thereof in his hands, for all lawful charges for their storage and preservation; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in relation thereto; also for all reasonable charges and expenses for notice, and advertisements of sale, and for sale thereof where default has been made in satisfying his lien.

"Section 33. Subject to the provisions of the following section, such a lien may be enforced—

"(a) Against all goods, whenever deposited, belonging to the person who is liable as debtor for the claims to secure which the lien is asserted; and

"(b) Against all goods belonging to others which have been deposited at any time by the person who is liable as debtor for the claims to secure which the lien is asserted, if such person had been so intrusted with the possession of the goods that a pledge of

the same by him at the time of the deposit to one who took the goods in good faith for value would have been valid.

"Section 34. A warehouseman loses his lien—

"(a) By surrendering possession; or

"(b) By refusing to deliver the goods when a demand is made with which he is bound to comply under this chapter."

"Section 36. A warehouseman having a lien valid against the person demanding the goods may refuse to deliver them to him until the lien is satisfied."

[1] A question raised by the assignments of error is whether in this case the United States was required by section 15 to show a demand for delivery of the wool accompanied by an offer to satisfy the warehouseman's lien, in order to have the burden of the issue of negligence or freedom from fault borne by the warehouseman; or whether the demand that was made, unaccompanied by such offer, was sufficient for such purpose, it appearing that at that time no reason was given by the warehouseman for its failure to deliver, and that, at the time of the trial, its failure in this respect was due to its inability to make delivery.

Under the common law of Massachusetts, the state in which the contract of bailment was made, the depositor had the burden of proving that any loss or injury to goods sustained during the period of bailment was caused by the warehouseman's failure to exercise the care a reasonably careful owner of similar goods would exercise. Willett v. Rich, 142 Mass. 356, 7 N. E. 776, 56 Am. Rep. 684.

Section 15 of the act in question changed this rule of the common law and placed the burden upon the warehouseman, in case he refused or failed to deliver the goods bailed on demand, of showing that his inability to make delivery was not due to his failure to exercise such care, provided the depositor accompanied his demand by (a) an offer to satisfy the warehouseman's lien; (b) an offer to surrender, properly endorsed, the warehouse receipt, if negotiable; and (c) a readiness and willingness to sign, when the goods were delivered, a delivery receipt, if such signature was requested by the warehouseman.

The evidence in this case does not show that the warehouse receipt was negotiable, or that the warehouseman requested the depositor to sign a delivery receipt. These two provisions of the act are therefore without application in the case. It does appear, however, that the depositor, on making his demand for the wool, did not accompany it with an offer to satisfy the warehouseman's lien, and in this situation the question is whether the warehouseman still has the burden of proof, and may be required to show that his inability to make delivery was not due to his failure to exercise the care of a reasonably careful owner, if under the facts of the case it could be found that the warehouseman by his conduct waived a demand accompanied by an offer to satisfy his lien.

The District Court was of the opinion that the provision of section 15, relating to a demand and offer to pay, was inserted for the benefit and protection of the warehouseman, and that, unless he manifested an intention at the time the demand was made that it be accompanied by an offer to pay, he should not be permitted to avail himself thereafter of a failure to make the offer and escape the burden of proof which the statute imposed upon him. But we do not think that the mere omission of the warehouseman to request an offer of payment at the time the demand was made would excuse the depositor from accompanying his demand with an offer of payment. The requirement that the depositor so accompany his demand is a condition to the imposition of the burden of proof on the issue of negligence upon the warehouseman, and, unless he has estopped himself by his conduct from insisting upon it, it must be complied with to cast the burden of proof upon him. If circumstances may exist under which a warehouseman could be found to be estopped, and to have waived this provision of the law, we do not think the evidence in this case warrants a finding of such circumstances. The evidence does not show that the plaintiff (the warehouseman) or any one authorized by it, at the time the demand was made, gave any reason for its refusal or failure to deliver the wool upon which the depositor could have relied and changed his position. Had the warehouseman, at the time the demand was made, placed his refusal on the ground that the wool had been stolen or destroyed by fire, and the depositor in reliance thereon had failed to accompany his demand with an offer of payment, there might be ground for saying that the warehouseman was estopped to assert the contrary, and had waived this requirement. But the evidence is inadequate to support such a conclusion.

[2] The government further contends that, even though it must assume the burden of proof, and show that the warehouseman failed to exercise the care of a reasonably careful owner, it has sustained this burden

by the evidence submitted. This is the second ground upon which the court below sustained the defendant's counterclaim, and of which the plaintiff complains in its assignments of error.

In American Express Co. v. Farmington Shoe Mfg. Co., 299 F. 86, this court had under consideration an action brought by the shoe company against the express company under a federal statute imposing liability for negligence in the care of goods intrusted to an express company for transportation. In discussing the ground of our decision in Gillette Safety Razor Co. v. Davis, 278 F. 864, a case of like nature, this court said:

"In the Gillette Case it was strenuously contended by the plaintiff that, inasmuch as it appeared that the goods there in question were intrusted to the express company for transportation and were never delivered to the plaintiff, it was to be presumed from the fact of nondelivery that the plaintiff's loss was due to the defendant's negligence in loading or unloading the goods or while they were in transit. But, inasmuch as in that case the plaintiff in its declaration alleged that the goods were stolen, due to the defendant's negligence, and it was conceded that they were stolen, it was held that the fact of nondelivery would not in itself suffice to show negligence; that the plaintiff must go further and show that the loss through theft was due to the defendant's negligence. In that case it was recognized that a plaintiff, who had intrusted to a common carrier goods for transportation, which the carrier had failed to deliver, made out a prima facie case of negligence where it did not appear that the goods were stolen, destroyed by fire or some similar excuse for nondelivery was not made to appear."

In Chesapeake & Ohio R. Co. v. Thompson Mfg. Co., 270 U. S. 416, 46 S. Ct. 318, 70 L. Ed. 659, the Supreme Court had under consideration the same question presented in the cases just noted. It was there said:

"The respondent [plaintiff below] therefore had the burden of proving the carrier's negligence as one of the facts essential to recovery. When he introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner [defendant below] became subject to the rule applicable to all bailees, that such evidence makes out a prima facie case of negligence. Miles v. International Hotel Co., 289 Ill. 320, 124 N. E. 599; Miller v. Miloslowsky, 153 Iowa, 135, 133 N. W. 357; Dinsmore v.

Abbott, 89 Me. 373, 36 Atl. 621; Yazoo & M. Valley R. Co. v. Hughes, 94 Miss. 242, 246, 47 So. 662 [22 L. R. A. (N. S.) 975]; Hildebrand v. Carroll, 106 Wis. 324, 82 N. W. 145 [80 Am. St. Rep. 29]. The effect of the respondent's [plaintiff's] evidence was, we think, to make a prima facie case for the jury. See Sweeney v. Erving, 228 U. S. 233 [33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905]; Hanes v. Shapiro, 168 N. C. 34, 35, 84 S. E. 33; Sims v. Roy, 42 App. D. C. 496, 499. But even if this 'prima facie case' be regarded as sufficient, in the absence of rebutting evidence, to entitle the plaintiff to a verdict (Buswell v. Fuller, 89 Me. 600, 602, 603, 36 Atl. 1059; Cogdell v. Wilmington & W. R. Co., 132 N. C. 852, 44 S. E. 618), the trial court erred here in deciding the issue of negligence in favor of the plaintiff as a matter of law. For the petitioner [defendant] introduced evidence of the condition of the cars from the time of shipment to the time of arrival, which persuasively intended to exclude the possibility of negligence."

In Buswell v. Fuller, 89 Me. 600, 602, 36 A. 1059, 1060, Chief Justice Peters, speaking for the court, said:

"There is a manifest distinction between the burden of proof and the burden of evidence. How far the burden of evidence may bear upon a party to a litigation is usually more for the jury to determine as a matter of fact than for the ruling of the court as matter of law. Generally, where a plaintiff, as his cause of action, alleges negligence against a defendant, the burden of proof is upon the plaintiff throughout the trial, even though in instances the burden of evidence may change. And very many English and American cases hold the doctrine that the rule, requiring that a plaintiff who alleges negligence must affirmatively prove it, applies in any case of bailment where the bailor sues the bailee for not returning the articles bailed in suitable condition, or does not even return them at all, at the time when the bailee was to turn them over, and that an omission so to do does not of itself establish the bailee's negligence or default. But this doctrine is stoutly opposed by other strong and leading authorities."

After commenting on the respective views, he continued:

"While the general burden of proof does not change, if a bailor does not get any account of the loss of, or an injury to, the articles bailed, the proof of the fact of demand and refusal without such explanation

will make out a prima facie case for the bailor, and a conclusive case unless the bailee assumes the burden of evidence and shows facts proving the contrary."

In Willett v. Rich, 142 Mass. 356, 7 N. E. 776, 56 Am. Rep. 684, in which the Massachusetts court established the rule that in a bailment case the bailor has the burden of proof to establish negligence, the court said:

"It may be that, where there is a refusal to deliver, the plaintiff may make out a prima facie case upon proving this fact, because such refusal, if unexplained, is some evidence of the breach of the contract."

See, also, Smith v. Bank, 99 Mass. 605, 97 Am. Dec. 59; Cox v. Central Vermont, 170 Mass. 129, 49 N. E. 97.

The decision in Hanna v. Shaw, 244 Mass. 57, 138 N. E. 247, relied on by the storage company, does not differ from our own decision in Gillette Safety Razor Co. v. Davis, supra, where we held that the plaintiff did not make out a prima facie case of negligence from the fact of nondelivery, as the plaintiff there alleged in its declaration, and such was the fact, that the goods were stolen, and that, this fact appearing, the plaintiff was required to go further and show that the loss through theft was due to the defendant's negligence. While in the Hanna Case there was testimony that the plaintiff's automobile on the night when it was left at the defendant's garage was in good condition, and was in a damaged state the next day, there was no evidence that during the night the car was taken from the garage, or that the garage was not properly secured to prevent the entrance of trespassers. It further appeared that the trouble with the car was brought about by overheating the engine, and that the inference that the engine had been overheated before the car was left at the garage was equally consistent with one that it had been run and the engine overheated after the car was left there. It was held that "the plaintiff *in the circumstances here disclosed* did not make out a prima facie case merely by showing that he had left the machine in the defendant's garage in good condition, and that it was in a damaged state the next morning." In other words the circumstances disclosed that it was as probable the engine was damaged before the car was left at the garage as it was that it was damaged while there, and this being the situation the plaintiff had failed to sustain the burden of proof.

Here the plaintiff's receipt of the wool and its failure to deliver it when called for made out a prima facie case of negligence, in the absence of circumstances in any way tending to explain such failure. The question is one of general law. Salem Co. v. Manufacturers' Co., 264 U. S. 182, 191 (44 S. Ct. 266, 68 L. Ed. 628, 31 A. L. R. 867).

The judgment of the District Court is affirmed, with costs to the defendant in error.