**ATLANTIC COAST LINE R. CO. v. GEORGIA PACKING CO. et al.**

No. 12009.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1947.

Rehearing Denied Dec. 31, 1947.

See 165 F.2d 169.

W. W. Alexander, of Thomasville, Ga., V. E. Phelps, of Wilmington, N. C., and G. L. Reeves, of Tampa, Fla., for appellant.

A. B. Conger, of Bainbridge, Ga., and E. P. McCollum, of Thomasville, Ga., for appellees.

Before SIBLEY, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

This is an appeal from an order overruling appellant's motion for judgment notwithstanding the verdict and from the judgment entered against appellant upon the verdict. The sole question before us is whether there was evidence sufficient to justify the court below in submitting the case to the jury.

Plaintiff-appellee, a partnership located and doing business at Thomasville, Georgia, entered suit against defendant-appellant, the Atlantic Coast Line Railway, in the Superior Court, Thomas County, Georgia, to recover damages, in the amount of $3,231.51 and interest, caused to a carload shipment of beef by the alleged negligence of the defendant.

Three specific grounds of negligence were charged in the complaint: (1) failure to transport the shipment with reasonable dispatch; (2) failure to place the car for delivery until June 28, 1944, more than two days after it should have been delivered; and (3) failure to re-ice the car so as to preserve the beef. The charge as to the second ground is two-fold in that plaintiff contends that not only was the car late in arriving, but also that defendant failed to give prompt notice to the consignee when it did arrive.

The suit was removed to the federal court on the ground of diversity of citizenship.

On June 23, 1944, at about 4:00 p.m., plaintiff delivered to the defendant, the Atlantic Coast Line Railway, a carload of beef to be shipped by ordinary freight from Thomasville to the consignee, Wright Beef Company, in Washington, D. C. The car had been iced and re-iced by the carrier before loading at Thomasville, and the shipper's re-icing instructions, placed on the bill of lading by the shipper pursuant to tariff rules, read as follows: "Re-ice to full capacity with 20% salt at Thomasville, Ga., Waycross, Ga., Florence, South Carolina, Rocky Mount, No. Carolina, and oftener if delayed." The shipment was routed via "A. C. L. [defendant] to Richmond, Va., R. F. & P., B. & O., delivering carrier B. & O. delivery to Eckington Yard." Further instructions were to notify consignee Wright Beef Company upon arrival at the Eckington Yard, Washington.

Under usual conditions, the car would have left Thomasville at 6:00 p.m., on the day of shipment, but on this 23rd of June 1944, a fire had destroyed a trestle on defendant's line between Thomasville and Waycross, and as a result it was necessary for defendant to re-route the car via Albany, Georgia, to Waycross. This entailed a delay, after loading, of some 15 hours at Thomasville before the arrival of another train which could haul the car to Albany. Plaintiffs offered no evidence to show the time at which the car should have arrived in Washington had there been no delay at all, but defendant's evidence, which was not contradicted, showed that because they were able to put the car in question in a fast freight train from Waycross, the car arrived at Rocky Mount, N. C., at about the time it would have reached there under normal conditions. At Rocky Mount it was necessary, in order to re-ice the car according to instructions, to cut the car out of the fast train. This entailed another delay of 11 hours, but the evidence shows that this delay was no longer than was necessary in the circumstances. From Rocky Mount to Washington, the shipment moved without unnecessary delay and was delivered to the B. & O. at the Eckington Yard at 1:40 a.m. on June 27, 1944. Defendant's evidence tended to show that this was good time for ordinary freight between Thomasville and Washington, even without any delays at all. Apart from showing that the delays occurred, delays admitted by the defendant, plaintiff offered no evidence of any un-

usually long elapsed time from the point of origin to destination. "No carrier is bound to transport said property by any particular train or vessel or in time for any particular market, or otherwise than with reasonable dispatch." Uniform Bill of Lading, § 2(a). And the burden is upon the plaintiff to show that there was not reasonable dispatch. 9 Am.Jur. 743, § 526. This we think plaintiff failed to do.

█ Plaintiff also contends that the defendant was negligent in failing to give to the consignee prompt notice of the arrival of the shipment in the Eckington Yard. The car arrived at 1:40 a.m. on June 27, 1944. The undisputed evidence is that notice was telephoned at 4:00 a.m. on that morning to one Preston, who was known to be the trucker for the consignee Wright Beef Company; and that written notice of the arrival, properly stamped and addressed, was deposited in the United States mail at 5:00 a.m. on that same morning. It was admitted that Preston did in fact do the hauling for the consignee, and that the notice to him was in accordance with the usual procedure. As to the written notice to the Wright Beef Company, Mr. Wright testified that he "may have" received it, and that in fact he did receive notification by telephone in the afternoon of June 27, 1944. In the circumstances, it must be held on this point that plaintiff has failed to maintain its burden of proof of negligence.

Finally, plaintiff specifically alleges that defendant was negligent in failing to re-ice the car so as to preserve the beef. The uncontradicted evidence shows that the defendant fully carried out the re-icing instructions in the bill of lading, re-icing to full capacity during the delay before the loaded car left Thomasville, Georgia, and at each of the specified places en route. Defendant went further and re-iced once again in Washington after notice of the car's arrival had been sent to the consignee.

█ With respect to the degree of care required of a carrier in the transporting or refrigeration of perishable goods, the shipment of goods by rail interstate is subject to the provisions of the Interstate Commerce Act, 49 U.S.C.A. Under § 20 of that act, the responsibility assumed by the carrier is fixed by the agreement made and contained in the bill of lading, in accordance with published tariffs and regulations. Chesapeake & Ohio Ry. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; Lancaster v. McCarty, 267 U.S. 427, 45 S.Ct. 342, 69 L.Ed. 696; Boston & Maine R. Co. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450, Ann.Cas.1915D, 593; Standard Hotel Supply Co. v. Pennsylvania R. Co., D.C., 65 F.Supp. 439.

█ Rule 130 of Perishable Protective Tariff No. 11, § No. 1, of the General Rules and Regulations provides: "Condition of perishable goods not guaranteed by carriers.—Carriers furnishing protective service as provided herein do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay insofar as may be accomplished by reasonable protective service, of the kind and extent requested by the shipper, performed without negligence."

Rule No. 135 provides: "Liability of carriers.—Property accepted for shipment under the terms and conditions of this tariff will be received and transported subject to such election by the shipper respecting the character and incidents of the protective service as are provided for herein. The duty of the carriers is to furnish without negligence reasonable protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper or because the directions of the shipper were incomplete, inadequate or ill-conceived."

It is apparent that these rules limit the liability of a carrier transporting perishable goods to liability for negligent failure reasonably to carry out instructions given by the shipper.

█ Where it appears only that goods were delivered to a carrier in good condition and that the carrier delivered them to the consignee in damaged condition, the shipper has made out a prima facie case of negligence against the carrier who must then prove the exercise by it of proper care. But where the shipper alleges specific acts of negligence, the burden of proving such acts is upon him. Chesapeake & Ohio R. Co. v. Thompson Mfg. Co., 270 U.S.

416, 46 S.Ct. 318, 70 L.Ed. 654; National Dock & Storage Warehouse Co. v. United States, 1 Cir., 27 F.2d 4. Under the protective tariffs applicable in this case the shipper must show that there was a lack of ordinary care on the part of the carrier, but proof by the carrier of compliance with the shipper's instructions is a complete defense to an allegation of negligence in connection with the protective service. Sutton v. Minneapolis & St. L. Ry. Co., 222 Minn. 233, 23 N.W.2d 561; Southern Pacific Co. v. Itule, 51 Ariz. 25, 74 P.2d 38, 115 A.L.R. 1274. Plaintiff did not in any degree sustain its burden of proving the specific acts of negligence charged, while defendant-appellant incontrovertibly showed more than full compliance with plaintiff's instructions.

There being no showing of delay in the arrival of the shipment at its destination, nor of any failure promptly to notify the consignee of its arrival, nor of any failure on the part of defendant to comply with the shipper's re-icing instructions in the bill of lading, the trial court erred in overruling defendant's motion for a directed verdict at the close of the evidence and in submitting the case to the jury. This having been done, it was error to overrule defendant's motion for judgment non obstante veredicto.

The judgment appealed from is reversed, and the cause is remanded with directions to enter judgment for defendant notwithstanding the verdict.

Reversed and remanded with directions.