**ISTHMIAN S. S. CO. v. McELLIGOTT et al.**

No. 12912.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1949.

A. R. Lawton, Jr., Savannah, Ga., for appellant.

Alexander A. Lawrence, Savannah, Ga., Shelby Myrick, Savannah, Ga., for appellees.

Before HUTCHESON, HOLMES, and SIBLEY, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought by separate libels in personam, identical except for the name of the libel-

lants, the description of the goods, and the amount of the damages claimed, but tried together, the suits were for damages to personal property, belongings, and effects of libellants carried by the Steamship Cape San Martin on a voyage from Calcutta, India, to Savannah, Georgia.

The claims of the libellants were: that, having engaged passage on the Cape San Martin for the purpose of returning to the United States, and having in addition to personal baggage, which they placed in their cabins, a large quantity of household goods, personal belongings, and effects, they made arrangements with the ship's agent for their carriage as hold cargo or freight in the forward or magazine hatch, which was supposed to be water tight; that through the negligence of the master and crew the cover of the magazine hatch was not securely bolted down and, by water washing over the front of the ship during a storm, the hatch was flooded and the goods destroyed, with resultant damage to the McElligotts of $10,000 and to Mrs. Taylor of $2300.

The respondent admitted that libellants took passage, that the goods in question, packed in trunks and other large containers, were stored and carried in the hatch, and that they received damages as alleged. It denied liability, however, on the grounds that the damage was caused not by the fault or procurement of the master or crew of the ship or the servants or agents of respondent, but by dangers and perils of the sea, to wit, a storm or monsoon of great force and violence which the ordinary exertion of human skill and prudence could not guard against, the risks of damage from which libellants had assumed under Section 18 [1] of their passenger ticket. As a further defense, it alleged that, under Section 19 [2] of their tickets, the carrier's liability was limited to $100 per passenger.

Coming on for trial upon the issues joined, the cause was fully heard upon testimony given mainly in open court, though

1. Section 18 of the passenger ticket provides:
   "Passenger assumes the risk of, and agrees that carrier shall not be liable for * * * (b) loss, damage or delay of or to passengers baggage, effects or property arising from, caused by, or in the judgment of the carrier or Master, rendered necessary or advisable by reason of any act of God or * * * perils of the sea, * * * perils of navigation of any kind, * * * or from causes of any kind beyond carrier's control, whether or not of like or similar character to the foregoing."

2. "19. The fare for transportation under this ticket is based partly upon limitations and restrictions on the value, amount, and the nature of passenger's baggage, effects and property, and Carrier's liability and obligations in respect thereof. Full fares include transportation of baggage not exceeding weights and volumes set forth in Carrier's current passenger traffic rules and regulations and additional charge at rates prescribed therein will be payable for any excess. Carrier in no event shall have any liability whatsoever for any baggage, effects, or property consisting of money, jewelry, or other articles of high value mentioned in Title 46, section 181, U. S. Code, unless the same have been delivered to and accepted by Carrier for transportation under bill of lading, or have been deposited with purser. Carrier in no event shall have any liability whatsoever for the loss, destruction, theft, embezzlement, delay or damage of or to any passenger's baggage, effects, or property, not shipped under bill of lading, whether deposited or intended for deposit with purser or carried or intended for carriage in baggage rooms, or retained in passenger's custody, in excess of $100 for a passenger paying full adult fare or, in the case of a passenger paying less than full adult fare, in excess of a proportion of such sum based on the relation of the fare paid to such full adult fare, which amount it is agreed value of same does not exceed, unless on or before deposit of same with purser or delivery of custody of same to Carrier, or if not so deposited or delivered, then on or before embarkation, passenger shall declare in writing to Carrier a higher value for same and shall pay Carrier such sum, not exceeding five per cent on such declared excess, as may be fixed by Carrier, in which event any liability of Carrier shall not exceed the sum so declared. Any partial loss or damage for which the Carrier may be liable shall be adjusted pro rata on the foregoing basis. Birds, dogs or other animals will not be carried as baggage, and if carried will be subject to Carrier's regulations."

some of it was by deposition, as to the nature and extent of the storm, as to the causes and extent of the damage, and as to the pecuniary loss of libellants.

The district judge, upon full consideration of the evidence, being of the opinion, (1) that the receipted bills covering the payment of the compensation for the carriage of the property in question was in effect the arrangement in writing required by Section 20 [3] of the ticket contract involved, rejected the defense of limited liability, (2) that the damage was caused by the negligence of the respondent, its employees and agents, and (3) that libellants had proved the amount and extent of their damages, made findings of fact and conclusions of law [4] in both cases, giving judg-

3. Section 20 of the ticket contract provides:

"20. Carrier does not undertake to carry as baggage merchandise, furniture, household effects, paintings, pictures, securities, documents, instruments, samples, perishable goods, property of other than passenger, glassware, liquids or bric-a-brac or any other articles whatsoever not necessary for the passenger's personal use on the voyage covered hereby, and transportation thereof must be arranged for in writing by bill of lading or otherwise by the passenger with the Carrier."

4. "Findings of Fact.

1. The personal property, belongings and effects of libelants were damaged by reason of the negligence of Isthmian Steamship Company, its employees and agents, in

(a) Failing properly to secure the hatch cover and ventilator of the magazine hatch where such personal property was stored, with the result that sea water was allowed to enter the compartment during the voyage from Calcutta, India, to Savannah.

(b) Failing properly to inspect and test the ventilator cover of the port ventilator of the magazine hatch prior to departure of the SS Cape San Martin from India on the voyage concerned, so as to discover and correct the condition which existed as to corrosion of the gasket thereof and the existence of a space or opening through which water could enter the hatch during heavy seas.

2. The damage to the personal property of the libellants which was stored in the magazine hatch was not the result of a peril of the sea or an act of God; and proper diligence on the part of the officers and employees of the Isthmian Steamship Company in connection with the securing of the hatch and ventilator in question would have prevented the damage to the personal property of libellants despite the monsoons which the Cape San Martin encountered on the voyage to America and which at the time of the year in question may be expected.

3. By reason of the negligence of the libellee in the premises, the personal property, belongings and effects of the libellants were damaged in the total amounts of $4,581.81, & $1,152.69, which I find to be the difference between the market value of the damaged property at the time the same was delivered to the libellees and the value thereof after the damage in transit.

4. The personal property, belongings and effects of the libellants were shipped under and in accordance with Section 20 of the passenger ticket issued by Isthmian Steamship Company on June 16, 1947, to Libellants and not under Section 19 thereof. The said property was not necessary or intended for passengers' personal use on the voyage in question, and was boxed and packed in a different manner from the ordinary personal baggage of passengers.

5. Libellants made arrangements with the Agent of Isthmian Steamship Company at Calcutta for the transportation of the property in question by a separate arrangement as provided in Section 20 of the Ticket Contract, and paid for the transportation of such personal property the sum of $58.80.

6. The receipt covering the payment of the compensation for the carriage of the personal property in question is sufficient as an arrangement in writing required by and contemplated under Section 20 of the Ticket Contract involved.

7. Under the facts of the case the libellants were not accorded any real choice of rates in connection with the shipment of the personal property in question, and were not adequately informed or advised by Isthmian Steamship Company or its agent at Calcutta that an alternative rate existed.

8. Under the facts of the case the limitation of liability of the carrier, set forth in Sec. 19 of the Ticket Contract restricting recovery to $100 except under certain circumstances, is not applicable to the present case.

"Conclusions of Law.

1. This cause is a libel in admiralty, and the United States District Court for

ment for the McElligotts for $4581.81 and for Mrs. Taylor for $1152.69. Respondent has appealed.

Here upon six numbered assignments of error,[5] presenting, however, substantially four separate points, appellant, insisting that the judgments may not stand, seeks their reversal, while appellees urge that they were right and should be affirmed.

Agreeing with appellees that none of the positions respondent takes require a reversal, we will briefly point out why this is so.

■ In support of its first point that, because the burden of proving negligence is on libellants, instead of simply alleging that the baggage was delivered to the respondent at Calcutta in good order and was delivered to libellant in Savannah in bad order they chose to allege two specific

acts of negligence, appellant relies on our case, Atlantic Coast Line R. Co. v. Georgia Packing Co., 164 F.2d 1. This reliance will not do. That case dealt not with nonperishable goods of the kind involved here but with perishable goods with respect to which the tariffs expressly provided that the liability of the carrier was limited to liability for negligent failure reasonably to carry out the instructions given by the shipper.

But if we could agree that by pleading negligence, libellants took upon themselves the burden of proving it, this would not avail appellant, for, as will be made clear when we deal with appellant's third point, the evidence furnished ample support for the district judge's finding that the damages were caused by, and due to, the negligence and fault of respondent and not to excepted perils.

the Southern District of Georgia has jurisdiction.

2. The damage to the personal property of the libellants which was stored in the magazine hatch was not the result of a peril of the sea or an act of God; and proper diligence on the part of the officers and employes of the Isthmian Steamship Co. in connection with the securing of the hatch in question and inspection of the ventilator and securing same would have prevented the damage to any personal property of libellants despite the monsoons which the Cape San Martin encountered on the voyage to America and which at the time of the year in question may be expected.

3. The personal property, belongings and effects of the Libellants were shipped under and in accordance with Section 20 of the passenger ticket issued by Isthmian Steamship Company on June 16, 1947, to Libellants and not under Section 19 thereof. The said property was not necessary or intended for passengers' personal use on the voyage in question, and was being boxed and packed in a different manner from the ordinary baggage of the libellant and other passengers.

4. The arrangement at Calcutta for the transportation of the property in question and the receipt covering the payment of extra compensation for the carriage thereof constituted an arrangement in writing required by and contemplated under Section 20 of the Ticket Contract involved.

5. The limitation of liability of the carrier, set forth in Section 19 of the Ticket Contract restricting recovery to $100.00 except under certain circumstances, is not applicable to the present case.

6. Judgment is hereby awarded in favor of Libelant and against Isthmian Steamship Company in the amount of $4581.81 and costs of court are hereby assessed against libellees. Let the Clerk prepare a bill of costs containing the court costs and item chargeable against libellee, including the taking of certain depositions." (In the case of Mrs. Taylor, Conclusion 6 read $1152.69 instead of $4581.81.)

5. These are:

(1) That the burden of proof was on the libellants and libellants failed to prove the negligence alleged.

(2) That the McElligotts did not prove the value of their damaged property when it was delivered to respondent and there was, therefore, no basis for a finding of damage in their favor;

(3) That the damage was caused by an act of God or a peril of the sea or causes beyond respondent's control, of which libellant assumed the risk under Sec. 18 of the ticket contract.

(4) The damaged hold baggage was shipped under Section 19 of the ticket contract which imposed a valid limitation of $100 per person and not under Sec. 20 as found by the court.

Upon the second point made by appellants that because the McElligotts failed to prove the value the damaged goods had at the time they were shipped, the evidence furnishes insufficient basis for the court's findings, we think that the appellant is under a misapprehension of the nature and character of the proof required and furnished here.

■ The determination by the court of the loss by damages to personal property of the kind involved here is not a matter of exactitude or of precise mathematical requirement. It is sufficient if the proof fairly shows the nature and character of the goods, whether new or second hand, and if second hand, affords a fair basis for arriving at the loss caused by their complete destruction.

■ The evidence as to what it would cost to replace the goods was admissible as a circumstance, though, of course, not conclusive. In the absence of contradictory evidence, as to value and damage, and there was none, the district judge had the right, using McElligotts' testimony for what assistance it would give and basing his judgment on the entire evidence, to make his own determination, fixing the loss at one-half of their replacement value. 25 C.J.S., Damages, § 88, page 629, Atlanta Baggage & Cab Co. v. Mizo, 4 Ga.App. 407, 412, 61 S.E. 844. We see no reason to disturb his finding.

■ Upon the third point, that the damages were due to perils of the sea, it would serve no useful purpose for us to set out the evidence as to the nature and severity of the storm and the opinions as to how the water got in, including whether the violence of the storm was such and so unprecedented as to amount to an Act of God or a Peril of the Sea. It is sufficient to say: that in accepting the goods for storage in the forward or magazine hatch, the carrier represented that the place would be good storage under the circumstances and conditions of the voyage; that the evidence makes quite clear that the ship was sailing in monsoon weather; and that monsoons and heavy storms were predictable rather than unpredictable. It will not do

for the carrier, upon mere proof that there was a heavy storm, to claim that it has, as a matter of law, absolved itself from liability. In the end the determination of fault vel non was for the district judge, and we see no reason to question or depart from his findings.

There remains for disposition the matter most argued and the one that presents the most difficulty, whether the limitations of respondent's liability to $100 per passenger of Section 19 of the ticket applied, or whether the goods were shipped under Section 20.

Upon full consideration, we are of the opinion that the district judge was right in holding that Section 20, rather than Sec. 19 is the controlling one.

■■ We are in no doubt that the limitation of value in Section 19 is a valid limitation, and that if it applies to this case, libellants ought not to recover more than the amount limited there. We are, therefore, not in agreement with the views of the district judge that because the limitation was not called to libellant's attention it lost its binding force. We believe that the law is as stated otherwise in The Leviathan, 2 Cir., 72 F.2d 286 and The Morrow Castle, D.C., 168 F. 555. Neither do we think that the limitation is defeated by the finding that libellants were not accorded any real choice of rates and were not adequately informed that an alternative rate existed. Cf. Nashville C. & St. L. Ry. v. Ham, 78 Ga.App. 403, 50 S.E.2d 831. We are of the opinion, however, that the district judge was clearly right in holding that it is Sec. 20 rather than Sec. 19 of the ticket which is controlling here, and that the goods were shipped not as baggage, as defined in Sec. 19, but as merchandise, furniture, household effects, etc., as provided under Section 20. If authority for this view were needed, The LaBourgogne, 2 Cir., 144 F. 781, looks in this direction. But authority is not needed. The goods carried, and damaged are within the very language of Section 20, and though the agent stamped the receipt for the money paid for their carriage as receipt for excess baggage, any other conclusion than

that the goods were being carried as goods which, under the language of Section 20, the "carrier does not undertake to carry as baggage", would be an unreasonable one.

The judgment was right. It is

Affirmed.