## DELPHI FROSTED FOODS CORPORATION v. ILLINOIS CENT. R. CO.

### No. 438.

United States District Court
W. D. Kentucky.
March 3, 1950.

Terrell, Schultzman & Moore, Paducah, Ky., attorneys for plaintiff.

Wheeler & Marshall, Paducah, Ky., attorneys for defendant.

FORD, District Judge, sitting by designation.

The plaintiff, Delphi Frosted Foods Corporation, of New York brought this suit against the Illinois Central Railway Company, an Illinois corporation, for the recovery of $34,924.48 on account of alleged damage to six carloads of frozen fruit, five of which were shipped from Paducah, Ky., over the lines of the defendant and its connecting carriers to Jersey City, N. J., and one from Paducah, Ky., to New Orleans, La. Each shipment was upon a uniform straight bill of lading providing for "standard refrigeration, 30% salt", and "shipper's load and count". Recovery from defendant, the initial carrier, is sought under paragraph 11 of section 20 of the Interstate Commerce Act, as amended, usually known and referred to as. "The Carmack Amendment", 49 U.S.C.A. § 20 (11).

On July 2, 1945, I. C. car No. 52116 loaded with strawberries, dewberries and peaches left Paducah, Ky., consigned to plaintiff, care Hudson Refrigerating Company, Jersey City, N. J., and arrived at Jersey City July 7, 1945.

On July 10, 1945, I. C. car No. 55845 loaded with blackberries, dewberries and peaches left Paducah, Ky., consigned to plaintiff, care Hudson Refrigerating Company, Jersey City, N. J. and arrived at Jersey City July 18, 1945.

On July 16, 1945, MDT car No. 21740 loaded with blackberries left Paducah, Ky., consigned to plaintiff, care Union Terminal Refrigeration Company, Jersey City, N. J., and arrived at Jersey City July 21, 1945.

On July 17, 1945, I. C. car No. 54400 loaded with blackberries left Paducah, Ky., consigned to plaintiff, care Union Terminal Refrigerating Company, Jersey City, N. J., and arrived at Jersey City July 22, 1945.

On July 18, 1945, I. C. car No. 50187 loaded with yellow peaches left Paducah, Ky., consigned to Southland Products Company, care New Orleans Cold Storage Company, New Orleans, La., and arrived at New Orleans on July 21, 1945.

On July 21, 1945, I. C. car No. 50265, loaded with blackberries left Paducah, Ky., consigned to plaintiff, care Union Terminal Refrigerating Company, Jersey City, N. J., and arrived at Jersey City on July 25, 1945.

Paragraph (11) of section 20 of the Interstate Commerce Act, as amended by the Act of April 23, 1930, 46 Stat. 251, provides: "* * * that it shall be unlawful for any such receiving or delivery common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice: * * *." An exception to the provision as to the filing of claims contained in this paragraph, as originally adopted, was eliminated by the 1930 amendment.

In conformity with this provision of the Act, paragraph 2(b) of each of the bills of lading upon which the shipments here involved were made is as follows: "2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

As to the claims of the plaintiff on account of the shipments in cars MDT No. 21740, I. C. No. 54400, I. C. No. 50187 and I. C. No. 50265, in addition to its denial of liability on other grounds, the defendant

asserts by its answer, as amended, that the plaintiff failed to file claims in writing with this defendant, the initial carrier, or with the carrier who delivered the cars to the consignees at destination within nine months after the delivery of the property, as required by paragraph 2(b) of the bills of lading. On account of the plaintiff's failure in this respect, it is defendant's contention that plaintiff is precluded from recovering damages to these shipments. While candidly admitting that it filed no claims in respect to these four shipments and that none were filed on its behalf, the plaintiff responds by saying that in each instance claims in writing for the damages to these shipments were filed with the delivering carriers within the required period by certain of its customers. Without challenging the validity or reasonableness of the provisions of the contract, plaintiff contends: (1) That its failure to file its claims as to these four shipments is excused or the stipulations are inapplicable for the reason that by the written claims filed by others with the delivering carriers, defendant received or was chargeable with actual knowledge of all the conditions as to the damages to the property which written claims filed by this plaintiff would have given, thereby fully serving the purpose of the stipulation and (2) that since the stipulation merely requires that "claims" must be filed without stating by whom they be filed, even if the stipulation is applicable to these four shipments the filing of claims by other claimants constituted compliance.

In support of its first contention the plaintiff relies upon Hopper Paper Co. v. B. & O. R. Co., 7 Cir., 178 F.2d 179. The reference in this opinion to Louisiana & Western R. Co. v. Gardiner, 273 U.S. 280, 284, 47 S.Ct. 386, 71 L.Ed. 644, holding that the provisions of paragraph (11) of section 20 of the Interstate Commerce Act were not intended to operate as a statute of limitation seems to have no bearing upon the validity or applicability of a contractual provision fixing a period of limitation contained in a bill of lading authorized by the Federal Statute.

In Chesapeake & Ohio Ry. v. Martin, 283 U.S. 209, 212-213, 51 S.Ct. 453, 454, 75 L.Ed. 983, the Court said: "The provision of the bill of lading that claim for loss in case of failure to deliver must be made within six months after the lapse of a reasonable time for delivery is authorized by federal statute, and is valid and applicable, Georgia, Fla. & Ala. Ry. Co. v. Blish Co., 241 U.S. 190, 197; 36 S.Ct. 541, 60 L.Ed. 948; and, since it was issued in respect of an interstate shipment pursuant to an act of Congress, the bill of lading is an instrumentality of such commerce, and the question whether its provisions have been complied with is a federal question to be determined by the application of federal law. Southern Express Co. v. Byers, 240 U.S. 612, 614, 36 S.Ct. 410, 60 L.Ed. 825, L.R.A.1917A, 197; Southern Ry. Co. v. Prescott, 240 U.S. 632, 635-636, 36 S.Ct. 469, 60 L.Ed. 836; Georgia, Fla. & Ala. Ry. v. Blish Co., supra, 241 U.S. at page 195, 36 S.Ct. 541; St. Louis, I. M. & So. Ry. Co. v. Starbird, 243 U.S. 592, 595, 37 S.Ct. 462, 61 L.Ed. 917." And in denying the right of the shipper to invoke the right of estoppel against the railroad's claim of a failure to comply with the requirement of the bill of lading that claim for loss must be made within a specified time, the Court, 283 U.S. on page 222, 51 S.Ct. on page 458 of the same opinion said: " * * * To allow it would be to alter the terms of a contract, made in pursuance of the Interstate Commerce Act and having, in effect, the quality of a statute of limitation, and thus to open the door for evasions of the spirit and purpose of the act to prevent preferences and discrimination in respect of rates and service."

However, since the rule applied by the Court in the Hopper Paper Company case seems to be expressly limited in its application to "cases such as ours is", [178 F.2d 181] we need go no further than point to the exceptional and extraordinary facts of that case which make it clearly distinguishable from the case presently under consideration. It appears from the opinion that the claimant's property there involved, except for a small salvage, was destroyed while in transit as a result of a wreck between two of defendant's trains and the claim against the railroad was "for a loss

caused by its admitted negligence". No such facts or circumstances are present here.

Authorities cited in support of the second contention relate to the substantial compliance rule. None of them, however, suggests the application of this rule where the claimant made no effort or attempt to comply with the stipulation.

 In Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U.S. 190 on pages 194, 196, 36 S.Ct. 541, on page 544, 60 L.Ed. 948, commenting upon a similar provision of a bill of lading, the Court said: "* * it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice *of all claims* against it even with respect to its own operations." (Italics supplied). Obviously, the word "claims", as used in the stipulation, relates to and includes all claims. This interpretation is confirmed by the further provision that "suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice." The beginning of the period of limitation thus prescribed can only be fixed by the carrier's disallowance of a claim by a notice in writing to the claimant. The plaintiff having admitted that it filed no claim and none was filed on its behalf, it seems obvious that acceptance of its interpretation of the stipulation would completely frustrate operation of this provision of the bill of lading for it could hardly be plausibly argued that disallowance of a conflicting claim filed by another would constitute disallowance of the plaintiff's claim. The Supreme Court has emphasized that the parties may not waive or ignore a valid provision of the contract under which the shipment was made pursuant to the Federal Act. "A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed." Georgia, Fla. & Ala. Ry. v. Blish Co., supra.

The failure of the plaintiff to file its claims in writing in respect to the four shipments above mentioned, in accordance with the stipulation set out in paragraph 2(b) of the bills of lading, a condition precedent to recovery, results in defeating all right to recover on these four shipments, and its claims in respect to them must be denied.

Claims for damage to the shipments of July 2, 1945, in I. C. car No. 52116 and of July 10, 1945, in I. C. car No. 55845 remain for consideration.

According to the uncontroverted testimony of William L. Keleher, Assistant Superintendent of Equipment of the Merchants Dispatch Transportation Corporation, a corporation engaged in supplying refrigerator cars, these cars were standard refrigerator cars, each having steel underframing, wooden superstructure and metal roof with 2½ inches of hair insulation upon floor, sides, end walls and roof, with an added board form of insulation of ½ inch on the floor.

I. C. car No. 52116 contained strawberries, dewberries and peaches. After introducing evidence that this car was properly loaded and the fruit in good condition when delivered to the railroad for transportation, and when received at destination the peaches were in an unmarketable condition and worthless as the result of bad discoloration, the plaintiff rested its case upon this claim making no claim on account of damage to the large amount of strawberries and dewberries contained in the car.

The evidence introduced by the defendant tends to show from the railroad records that this car was transported to its destination by the defendant and its connecting carriers without unusual delay or rough handling and that the requirement of standard refrigeration with 30% salt was observed by the re-icing of the car to capacity at all regular icing stations. The defendant also introduced considerable testimony in support of its defense that the defrosted and damaged condition of the fruit in this car at the time of its arrival at destination was the result of improper processing, packing and loading and its inherently perishable nature.

I. C. car No. 55845 contained blackberries, dewberries and peaches. After introducing evidence that this car was properly loaded and the fruit in good condition when delivered to the railroad for transportation, and when received at destination the peaches were in an unmarketable condition and worthless as the result of bad discoloration, and the remaining fruit in the car consisting of blackberries and dewberries were defrosted to such an extent as to be unmarketable except for small amount of salvage realized after the expenditure of considerable money and effort in restoring them, the plaintiff rested its case upon this claim.

The evidence introduced by the defendant with reference to this car shows from the railroad records that the requirement of standard refrigeration with 30% salt was observed by the defendant and its connecting carriers by the re-icing of the car to capacity at all regular icing stations. While the evidence shows that this car was in transportation for a substantially longer period than usually required, since it appears that at all times during the transportation the bunkers of the car were kept sufficiently full of ice to adequately preserve refrigeration, the extent of the delay encountered by this car was not a contributing factor in the defrosting of the fruit. The defendant also introduced considerable testimony in support of its defense that the defrosted and damaged condition of the fruit in this car at the time of its arrival at destination was the result of improper processing, packing and loading and its inherently perishable nature.

 Under general rules and regulations of the Interstate Commerce Commission, carriers transporting perishable goods do not guarantee their condition. Rule 130 of Perishable Protective Tariff No. 11, § No. 1, of the General Rules and Regulations provides: "Condition of perishable goods not guaranteed by carriers.—Carriers furnishing protective service as provided herein do not undertake to overcome the inherent tendency of perishable goods to deteriorate or decay, but merely to retard such deterioration or decay insofar as may be accomplished by reasonable protective service, of the kind and extent requested by the shipper, performed without negligence."

Rule No. 135 provides: "Liability of carriers.—Property accepted for shipment under the terms and conditions of this tariff will be received and transported subject to such election by the shipper respecting the character and incidents of the protective service of the kind and extent so directed or elected by the shipper and carriers are not liable for any loss or damage that may occur because of the acts of the shipper or because the directions of the shipper were incomplete, inadequate or ill-conceived."

In Atlantic Coast Line R. Co. v. Georgia Packing Co., 5 Cir., 164 F.2d 1, 3, the Court said: "It is apparent that these rules limit the liability of a carrier transporting perishable goods to liability for negligent failure reasonably to carry out instructions given by the shipper."

The effect of the evidence introduced by plaintiff tending to show delivery of the shipments in these cars to the carrier in good condition and delivery to the consignee in bad condition subjected the railroad *to the rule applicable to all bailees, that such evidence makes out a prima facie case of negligence.*" C. & O. Ry. Co. v. Thompson Mfg. Co., 270 U.S. 416, 423, 46 S.Ct. 318, 320, 70 L.Ed. 654. (Emphasis supplied).

"Whether we label this permissible inference with the equivocal term 'presumption' or consider merely that it is a rational inference from the facts proven, it does no more than require the bailee, if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It does not cause the burden of proof to shift, and if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start." Commercial Molasses Corp. v. N. Y. Tank

Barge Corp., 314 U.S. 104, 111, 62 S.Ct. 156, 161, 86 L.Ed. 89.

The evidence introduced by defendant is not only sufficient to raise an unresolvable doubt as to the validity of the inference of negligence arising from the prima facie case made by the plaintiff's proof but it is amply sufficient to persuade that non-existence of negligence in the performance of the duty to afford reasonable protective service of the kind and extent requested by the shipper is as probable as its existence. The plaintiff has not sustained the burden of persuasion which upon the whole evidence remains upon it, where it rested at the start.

Judgment will be entered in conformity herewith.

(I have endeavored to sufficiently state herein findings of fact and conclusions of law to conform to Federal Rules of Civil Procedure, Rule 52(a), as amended, 28 U.S.C.A.).